# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

FILED
U.S. DIST. COURT
BRUNSWICK DIV.
2005 OCT -4  P 4:41
CLERK

CATO WALTHOUR and : CIVIL ACTION
SAMUEL WALTHOUR,
:
    Plaintiffs,
:
    v.
:
RAYONIER INC.,
:
    Defendant. NO. CV204-133

### AMENDED ORDER

Plaintiffs, Cato Walthour and Samuel Walthour, filed the above-captioned case against Defendant, Rayonier Inc., asserting race discrimination claims under Title VII and related state law claims for intentional infliction of emotional distress.

Presently before the Court is Rayonier's motion for sanctions. Because some of the alleged discriminatory conduct was challenged in a timely fashion, the motion will be **DENIED**.

AO 72A
(Rev. 8/82)

**BACKGROUND**

Rayonier operates a paper pulp mill in Jesup, Georgia. The Walthours are Maintenance Support Utility Level II technicians in the mill's Maintenance Department. In 1972, Cato Walthour began working at the mill, as a laborer in the bleach plant. In his current position, Cato Walthour operates a cherry picker, flatbed truck, and Bobcat machinery. In 1972, Samuel Walthour also began working at the mill, doing yard utility work. His typical duties include operating a jackhammer, building scaffolds, and shoveling.

Plaintiffs, both black men, are first cousins. They contend that Rayonier discriminated against them by assigning more lucrative, less labor-intensive work to less senior, white maintenance workers. The Walthours aver that Hugh Harvey and Gary Bowen were assigned vibration testing work, without either Plaintiff having the chance to take the assignments first.

The parties agree that the vibration testing work was done ordinarily by millwrights, not maintenance support technicians. Bowen and Harvey performed these jobs on a temporary, or "relief," basis, but how frequently the men did so is not in the record. According to Rayonier, Bowen and Harvey had been performing the work at least since August 1996. Bowen and

Harvey began earning more than the Walthours, when performing vibration testing duties.

On January 8, 2001, Plaintiffs filed a grievance through their trade union, the Paper, Allied-Industrial, Chemical & Energy Workers International Union, Local 787, contesting the job assignments. Although this grievance was unsuccessful, on August 19, 2003, the Walthours filed another grievance regarding this assignment of duties, seeking the difference in pay between their wages and what Harvey and Bowen were earning until the matter was resolved.

When the second grievance was rejected, the Walthours took their complaints to the federal government. On October 7, 2003, Plaintiffs signed a charge questionnaire, jointly, and mailed it to the U.S. Equal Employment Opportunity Commission ("EEOC"), challenging Rayonier's conduct as racially motivated. On December 30, 2003, Cato Walthour submitted a perfected charge of discrimination against Rayonier to the EEOC. The next day, Samuel Walthour also filed an individual, perfected charge of discrimination.

## **DISCUSSION**

Federal Rule of Civil Procedure 11 provides, in part:

AO 72A
(Rev. 8/82)

(b) Representations to Court.

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

"Rule 11 motions should not be made . . . to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Fed. R. Civ. P. 11 advisory committee's note (1993). Rule 11 is a salutatory tool when invoked to deter frivolous litigation, but it must be asserted with discretion and care.

4

Rayonier contends that Plaintiffs' claims are time barred because they failed to file their charges of discrimination with the EEOC within 180 days of the alleged discriminatory event. 42 U.S.C.A. § 2000e-5(e)(1) (2003). Rayonier asserts that the Walthours' "failure to promote" claims arose either (1) when they became aware that Bowen and Harvey were assigned the work in the early to mid-1990s, or (2) when they became aware that Bowen and Harvey were earning more for performing that work in December 2000.

Having complied with the safe-harbor provision of Rule 11,[1] Rayonier seeks the sanction of dismissal of the Walthours' claims, and monetary sanctions to reimburse it for having to defend against these purportedly stale claims.

Rayonier argues that it is obvious that Plaintiffs felt that they were being discriminated against more than 180 days before the end of December 2003 (the time when Plaintiffs filed their perfected charges), in light of Plaintiffs' internal

---

[1] Federal Rule of Civil Procedure 11(c)(1)(A) provides, in relevant part:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . , the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

grievance dated January 8, 2001. However, like the grievance filed in August 2003, the January 2001 grievance was brought on behalf of several members of the union, both black and white. C. Walthour Dep. 26. Notably, as Rayonier's counsel was careful to emphasize during Plaintiffs' depositions, there is no mention in either of the internal grievances that the Walthours suspected they were being discriminated against on the basis of their race. C. Walthour Dep., Exs. 3 & 5.

As a result, the Court rejects Rayonier's argument that the men were aware of their claims, as a matter of law, on the date they learned that Bowen and Harvey began the vibration testing, or when they learned that Bowen and Harvey were earning a better wage for the work. All the grievances show is that certain union members disputed the assignments on the basis of seniority under the union contract. There are any number of justifications that the Walthours could have come up with for management's conduct, which might violate the union contract, but are legal under federal employment law.

Rayonier recognizes that the Walthours contend that the discrimination was an ongoing occurrence: that is, unlike typical failure to promote, failure to hire, termination, or other cases involving averments of discrete, discriminatory

AO 72A
(Rev. 8/82)

conduct, this is not a situation where Plaintiffs applied for a promotion, but were denied it only once. Nonetheless, Rayonier maintains that Plaintiffs' claims are still untimely because the men identify April 14, 2003, as the last date on which discrimination took place (which is more than 180 days before Plaintiffs' perfected charges were filed).

The Court notes that "serial violations" of discrete acts of discrimination do not give rise to a "continuing violation" theory, whereby conduct that occurs outside the 180 day window can be "revived" by "anchor" violations that occur within the 180 day limitations period. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-114 (2002). "[F]ailure to promote" claims are "discrete acts" that "occur" "on the day[s] that they 'happened.'" Id. at 114, 110.

Thus, the Walthours' claims do not constitute a "continuing violation." Any claims that they might have had that occurred more than 180 days before they filed their charging documents with the EEOC are not actionable. Still, any discrimination that occurred within 180 days of their complaints to the EEOC is independently actionable, and the statute does not "bar an employee from using the prior acts as evidence in support of a timely claim." Id. at 113.

AO 72A
(Rev. 8/82)

As Rayonier notes, each of the Walthours' charges of discrimination state that "[o]n or about April 14, 2003, I was denied the opportunity to apply for a promotion to the Vi[b]ration job." However, in the charging document entitled "date(s) the discrimination took place[,]" the Walthours also marked the box indicating that the discrimination was a "continuing action." Consequently, Rayonier was on notice that the men viewed their complaints as ongoing, beyond April 14, 2003. The Walthours are laymen, and all indications are that they prepared the EEOC documents without the assistance of counsel.

Moreover, during Cato Walthour's deposition, Rayonier's attorney asked whether it was true that the vibration testing ceased being performed on a relief basis by maintenance employees in mid-December 2003, and the deponent agreed that he believed that was accurate. C. Walthour Dep. 41-42. In light of these facts, Rayonier's argument that the undisputed facts of record demonstrate that the promotions did not occur after April 14, 2003, is difficult to fathom.

In sum, the Walthours assert timely failure to promote claims. At the very least, the practice of assigning the vibration testing to Bowen and Harvey occurred once in mid-

AO 72A
(Rev. 8/82)

December 2003. Cato Walthour Dep. 41-42. In addition, although the perfected charges were filed on the final days of 2003, the 180 day limitations period did not begin running in mid-2003, as Rayonier suggests. Rather,

> a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

29 C.F.R. § 1601.12(b) (2005).

Thus, any failure to promote claim that arose in the 180 day period before the Walthours filed or submitted their initial EEOC questionnaire in October 2003 are not time-barred.[2]

---

[2] The parties have not addressed whether the Walthours' clock should begin running on April 10, 2003 (180 days before October 7, 2003, the date Plaintiffs signed and mailed the questionnaire) or April 17, 2003 (180 days before October 14, 2003, the date the EEOC received the form).

It is unclear whether Plaintiffs allege that Bowen and Harvey were appointed as temporary vibration workers on an ad hoc, as needed basis, on or near the days and times that they performed the duties, or whether the promotions were more formal events that lasted for a longer period of time, such as quarterly. If the former, there could have been dozens of discrete failure to promote claims during the 180 day period preceding the date when the Walthours submitted their charging documents to the EEOC. For purposes of this motion, it is sufficient to conclude that some of the
(continued...)

In filing this motion, Rayonier's lawyers have accused Plaintiffs' attorney of professional incompetence. As should be obvious, such a charge should not be made lightly, and counsel are reminded that Rule 11 applies to motions made under Rule 11. In that respect, it is not obvious that Rayonier's motion for sanctions was well grounded in fact. The company posited that the Walthours' claims were stale, even though it knew that Cato Walthour testified, and otherwise contended, that the challenged practices occurred on an ongoing basis until mid-December 2003 (about two weeks before Plaintiffs' perfected charges were filed).

Unfortunately, Rayonier's attorneys may have also been less than forthright by misstating another fact from Cato Walthour's deposition. In its brief in support of sanctions, Rayonier asserted that Cato Walthour testified that he was aware that Bowen and Harvey began performing vibration testing work as early as March 1993. Dkt. No. 25 at 6-7. Yet, the deposition does not appear to support this factual contention. Rather, it shows the following exchange between Rayonier's counsel and Walthour:

---

[2] (...continued)
discriminatory conduct allegedly occurred after April 17, 2003. C. Walthour Dep. 41-42.

10

>     Q    Now the company's records indicate that the very
>          first time that Hugh Harvey and Gary Bowen did
>          vibration testing was between March of 1993 and
>          August of 1996, that far back.  Do you disagree
>          with that?
>     A    I don't know.
>     Q    So you don't have any reason to agree or
>          disagree with that?
>     A    I don't.

C. Walthour Dep. 18-19; see also S. Walthour Dep. 20.

See Fed. R. Civ. P. 11(b)(3) & (4); see also Ga. Rules of Prof'l Conduct R. 3.1 & 3.3 (regarding meritorious claims and contentions and candor toward the tribunal).

These observations are not to say that Plaintiffs' counsel is without fault in his conduct in the case.  While the Court concludes that the Walthours' lawyer acted appropriately in insisting on prosecuting Plaintiffs' timely race discrimination claims, the Court notes that the Walthours' attorney may have misstated the law as it applies to this case.

In citing Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3d 5, 14 (1st Cir. 1998), Plaintiffs' counsel asserted that if a plaintiff alleges serial violations of the same sort of discrimination, an act of discrimination that occurs during the 180 days prior to filing the EEOC charge serves as an "anchor violation" that makes the entire course of discrimination actionable.  Dkt. No. 34 at 4.

AO 72A
(Rev. 8/82)

Therefore, Plaintiffs' counsel contended, all of the Walthours' failure to promote claims were cognizable under the "continuing violation" theory. Yet, outside the hostile work environment context, <u>Provencher</u> has no application. <u>See</u> <u>Morgan</u>, 536 U.S. at 113 ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"); <u>id</u>. at 115-120 (discussing why hostile work environment claims are different). In arguing that the continuing violation doctrine applied in this case, Plaintiffs' counsel may have come perilously close to running afoul of Rule 11(b)(2). <u>See</u> <u>also</u> Ga. Rules of Prof'l Conduct R. 1.1 (regarding competence).

While the Court does not find that counsel for either Plaintiffs or Defendant violated Rule 11, it does note the types of problems that have arisen in the litigation of this case are far from uncommon. Therefore, it is fitting to remind counsel to adhere scrupulously to all ethical restraints in the course of exercising their professional duties.

## CONCLUSION

For the reasons discussed above, Rayonier's motion for sanctions is **DENIED**. <u>See</u> Dkt. No. 25.

**SO ORDERED**, this \_\_\_4th\_\_\_ day of October, 2005.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA