In the United States District Court
for the Southern District of Georgia
Brunswick Division

FILED
U.S. DIST. COURT
BRUNSWICK DIV.
2005 OCT 27 A 11: 33
CLERK
           S.D. OF GA.

WILLIAM MILLEDGE,              :        CIVIL ACTION

    Plaintiff,                 :

    v.                         :

RAYONIER, INC.,                :

    Defendant.                 :        NO. CV204-133

### O R D E R

    Plaintiff, William Milledge, filed the above-captioned case against Defendant, Rayonier, Inc., asserting federal employment discrimination claims and a related state law claim for intentional infliction of emotional distress. Presently before the Court is Rayonier's motion for summary judgment. Because no genuine issue of material fact is in dispute, Rayonier's motion will be **GRANTED**.

AO 72A
(Rev. 8/82)

**BACKGROUND**

Rayonier operates a chemical cellulose and fluff pulp mill in Jesup, Georgia. In 1974, Milledge, a black man, began working at the mill. Milledge is a lead operator in the mill's Machines and Finishing Department, and has been employed in that department since he began working at the mill. Like his coworkers, he has filled in for absent shift supervisors from time to time during his tenure. In September 2003, Milledge applied for a promotion to become a shift supervisor in his department, but was not chosen for the job. Susan Stewart, a white woman with less experience, but with a college degree in Chemistry, was selected instead.

According to an affidavit provided by Tom Norton, Rayonier's Human Resources Director, Rayonier's promotion decision was influenced primarily by senior management's decision to increase the ranks of college-educated workers in its supervisory force at the mill. First consideration was given to Stewart because she was the only applicant for the position who held an advanced degree. The company also maintains that Milledge did not deserve to be promoted based on his past performance as a relief supervisor.

According to company records, Milledge was counseled for his poor job performance while serving as a relief supervisor in 2002 and 2003. On July 26, 2002, Machines and Finishing Operations Manager Jeff Scott informed Milledge that his performance as relief supervisor was unsatisfactory. Milledge Dep., Ex. 5. Scott. According to Scott, Milledge was unable to earn the respect and trust of his subordinates and superiors in this role. Particularly, Scott faulted Milledge for failure to communicate with subordinates about schedules. Milledge Dep. 43-45, Ex. 5. Moreover, Scott ranked the eight relief supervisors at this time, and placed Milledge, along with two others, in the lowest category of "needs improvement."[1]

The next July, Milledge was again counseled for poor performance as a relief supervisor. On July 7, 2003, Machines and Finishing Operations Manager Mark Johnson and Finishing Manager Bruce Woodard met with Milledge to discuss his performance as a relief supervisor for a four day period at the end of the previous month. According to a July 9, 2003, memorandum written by Johnson, on June 26, 2003, a hydraulic

---

[1] Milledge has asserted that the supposition that Scott counseled him regarding the matters contained in the 2002 performance evaluation is "unsupported by credible evidence." Plaintiff's Response to Defendant's Statement of Material Facts, Dkt. No. 37 at 2. This contention is noteworthy, given that Milledge agreed during his deposition that he recalled the counseling session. Milledge Dep. 44.

AO 72A
(Rev. 8/82)

pump motor problem caused the mill's AR2 wrap line to quit functioning. Milledge Dep., Ex. 14.

Johnson reported that company notification guidelines had been e-mailed to Milledge on June 13, 2003, but that Milledge had failed to read this document. Johnson wrote that Milledge should have reported the incident to one of Milledge's superiors under the notification guidelines. Nonetheless, Johnson stated that Milledge did not attempt to do so until Milledge's replacement pointed this fact out to him at the end of his shift.

On June 29, 2003, another production problem arose. This time, a machine was not operating correctly because it had an improper pH level. Johnson wrote that Milledge did nothing to correct this problem, although he was told about it less than halfway through his shift. Johnson stated that Milledge left the resolution of the matter up to his subordinates. As a result, the pH level remained offgrade throughout the rest of the shift. According to Johnson, Milledge's failure to notify a superior was another violation of the notification guidelines.[2]

---

[2] Milledge has objected to the contention that he failed to read or follow the notification guidelines, arguing that this contention is
(continued...)

Johnson stated that he and Woodard were troubled especially by Milledge's lapse on June 29, 2003, given that Milledge had been warned about following the notification guidelines just three days earlier. Johnson concluded that Milledge was lackadaisical in his response to significant production problems.

As might be expected, Plaintiff has a different perspective regarding his culpability for the events that led to his counseling sessions. Milledge maintains that, although he failed to communicate with subordinates about certain scheduling issues in 2002, this occurred when other matters were a higher priority. Plaintiff adds that the fact that he failed to advise personnel to come to the mill at the correct time did not result in any lost production or additional expense to the company.

As for the events of June 29, 2003, Milledge contends that he was not to blame because he had never been trained to recognize the proper pH level. Milledge contends that this measurement was done by the lead operator in the Machines

---

[2](...continued)
unsupported by credible evidence. Yet, the business record submitted in connection with Milledge's deposition supports this conclusion, as does the deposition testimony of Bruce Woodard. Milledge Dep., Ex. 14; Woodard Dep. 17-19, 27.

Department, rather than by personnel in the Finishing Department, where he worked regularly.

According to Milledge's affidavit, during the year before applying for the supervisor post, he had worked as a relief supervisor for thirteen weeks. During that time, Milledge contends that production was at normal or better than average level. Milledge contends that he always performed at a high level of proficiency while serving as a relief supervisor.

Milledge also faults Rayonier for maintaining a hostile work environment. Milledge contends that he has experienced three different incidents of racially derogatory comments. He saw the acronym "KKK" spray-painted on a bathroom wall around the end of 2003 or the beginning of 2004, and he saw the word "nigger" written or painted on a bathroom wall at least two or three times in the past, which he believes occurred before 2000. During Milledge's deposition, he testified that he took it upon himself to spray-paint over the KKK graffiti around the beginning of 2005. Milledge has also heard racist jokes told by black and white employees at the mill. Milledge Dep. 79-81, 83.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor. . .", United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991)(en banc)(internal quotation marks omitted).

Milledge alleges that Rayonier's decision to promote Stewart instead of him was motivated by racial animus, avers that a racially-hostile work environment exists at Rayonier, and maintains that Rayonier is liable for intentionally inflicting emotional distress upon him. The Court will address each contention in turn.

7

**DISCUSSION**

I.  **No Evidence of Pretext on Milledge's Failure to Promote Claim**

To establish a prima facie case of discriminatory failure to promote, Milledge must prove that (1) he belongs to a protected class, (2) he was qualified and applied for the promotion, (3) he was not promoted, and (4) the employer promoted someone outside the protected class. Walker v. Mortham, 158 F.3d 1177, 1185-93 (11th Cir. 1998).

If a prima facie case is presented, the employer must assert a legitimate, nondiscriminatory reason to justify the promotion decision. Id. at 1184. If the employer does so, the employee bears the ultimate burden of proving discrimination by showing that the employer's justification was a pretext for discrimination. Id.

In this case, Milledge has established a prima facie case.[3] However, Rayonier has offered legitimate, nondiscriminatory reasons justifying its promotion decision. In addition to

---

[3] Rayonier argues that Milledge cannot establish a prima facie case because he was unqualified due to his lack of a college degree or "equivalent experience." Rayonier argues that Milledge did not have "equivalent experience" because he performed poorly as a relief supervisor. Yet, poor performance is simply a legitimate, nondiscriminatory reason justifying the decision not to promote the employee. It is a tall order to argue that Milledge's past experience establishes that he lacked experience.

8

Milledge's documented shortcomings in a supervisory capacity, Stewart's superior academic credentials could motivate a reasonable employer to elevate Stewart to the position over Milledge. <u>Walker v. Prudential Prop. & Cas. Ins. Co.</u>, 286 F.3d 1270, 1276 (11th Cir. 2002); <u>Garcia-Cabrera v. Cohen</u>, 81 F. Supp. 2d 1272, 1280-81 (M.D. Ala. 2000).

> A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.

<u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1030 (11th Cir. 2000).

To establish pretext, Milledge must adduce sufficient evidence to give the jury a reasonable basis to disbelieve his employer. Milledge has not pointed to evidence that he had a college degree, or even produced witnesses or other evidence that call into question the truthfulness of the counseling reports prepared by Scott and Johnson. <u>Ross v. Rhodes Furniture, Inc.</u>, 146 F.3d 1286, 1291 (11th Cir. 1998).

Milledge's own subjective opinion of his superior credentials does not establish pretext, and the fact that he disagreed with his superiors' conclusions regarding his performance as a relief supervisor does not entitle him to the

9

promotion. Had Milledge's performance been offered as the sole reason for the promotion decision, and had Milledge offered some evidence to support his contention that the performance reports were trumped up to keep him from getting the promotion, then summary judgment would not be appropriate. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1332-33 (11th Cir. 1998); Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).[4]

However, the only evidence in the case supports Rayonier's assertion that its decisions were reached in good faith. Garcia-Cabrera, 81 F. Supp. 2d at 1281-82. At the risk of repeating an employment law truism, the Court is not "a super-personnel department," designed to sit in judgment, or question the wisdom, of an employer's justifiable employment decisions. Elrod, 939 F.2d at 1470.

During Milledge's deposition, he testified that he remembered the counseling sessions with Scott in 2002 and Johnson and Woodard in 2003. To the contrary, without offering any explanation of his deposition testimony, Milledge contends

---

[4] Milledge contends that Stewart has had difficulty performing the job, and is currently on probation. Yet, Stewart's subsequent job performance is irrelevant to the promotion decision. E.g., Bruno v. W.B. Saunders Co., 882 F.2d 760, 768 n.4 (3d Cir. 1989); cf. Cooper v. S. Co., 260 F. Supp. 2d 1352, 1366 (N.D. Ga. 2003).

10

in an affidavit that he did not receive any poor performance evaluations during 2002 or 2003. (In an apparent effort to cover all his bases, Milledge asserts that any criticisms he did receive during this time were part of an effort to sabotage him because management knew of his interest in a promotion.) Milledge Aff. ¶ 4.

A non-moving party may not create a genuine issue of fact for trial by submitting a self-serving affidavit with a conclusory statement that plainly conflicts with his previous deposition testimony. E.g., <u>Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc.</u>, 736 F.2d 656, 657 (11th Cir. 1984); <u>Tippens v. Celotex Corp.</u>, 805 F.2d 949, 953-955 (11th Cir. 1986)(where an affidavit is inconsistent with earlier deposition testimony, and is offered without explanation, it may be disregarded as a "sham").

Milledge has offered no evidence in support of his theory that the 2002 and 2003 performance evaluations were invented from whole cloth to keep him from getting a promotion due to racial bias at Rayonier. Milledge's only evidence of pretext is that Earl Dent, a white man with a high school education, has become a shift supervisor. However, even if true, Milledge overlooks the fact that there is no indication that Dent had

a similarly poor record while serving in a supervisory capacity, as Milledge does. Therefore, any comparison of the two men is meaningless, and fails to establish that Rayonier's proffered justifications are pretextual. Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1230 (11th Cir. 2002).[5]

The Court can dispense with Milledge's objections to some of Rayonier's evidence with relative ease. Milledge objects to the authenticity and admissibility of "a document" that he was asked about during his deposition. Plaintiff's Response to Defendant's Statement of Material Facts, Dkt. No. 37 at 2. According to Milledge, this document is hearsay. This rather cursory objection, to no document in particular, will not do. The exhibits to Milledge's deposition reveal a wide assortment of what appear to be business records, which are admissible into evidence under a well-known exception to the hearsay rule. See Fed. R. Evid. 803(6). The affidavits and depositions in the record indicate that the documents are authentic.

Milledge does somewhat better in his objection to the affidavit of Tom Norton, which he asserts is based on hearsay and other inadmissible evidence. Nonetheless, the Court

---

[5] It is immaterial that Milledge was untrained to recognize proper pH levels, inasmuch as he has not disputed that he was informed of the pH problem, and that he did nothing to inform his superiors of the malfunction.

12

rejects Milledge's argument that Norton's statement that Rayonier management decided to fill more supervisory positions with candidates with advanced educational degrees is hearsay.[6] As Rayonier's Human Resources Director, Norton could have personal knowledge of such a business decision, as he states under oath in the affidavit. Beyond that particular point, the Court cannot otherwise divine any other objection that Milledge has to Norton's affidavit.

Rayonier is entitled to summary judgment on Milledge's failure to promote claim because Milledge has adduced no evidence of pretext.

## II. No Hostile Work Environment Existed at Rayonier

To prevail on a hostile work environment claim, Milledge must show that (1) he belongs to a protected class, (2) he has experienced harassment based on that status, (3) the harassment

---

[6] According to Milledge, there must not be a company policy that prefers the hiring and promotion of college-educated supervisors because Rayonier employee John Simmons testified during his deposition that he was unaware of such a policy.

The fact that Simmons, an engineer who does mostly computer work, has not heard of such a policy does not mean that it does not exist. Indeed, the company need not have enacted any such policy formally to raise it as a justification for a particular hiring decision. Under the law, it is enough that the justification might reasonably motivate a similarly situated employer to make a promotion decision on that basis. Chapman, 229 F.3d at 1030.

was sufficiently severe or pervasive to change the terms and conditions of his employment and create an abusive workplace, and (4) there is a basis for holding the employer liable. <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571, 582-83 (11th Cir. 2000).[7]

If the employee perceives the workplace to be so hostile as to alter the terms and conditions of his employment, the Court must consider whether that perception is objectively reasonable. In aid of that determination, four factors ought to be considered by the Court:

> (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. . . . The courts should examine the conduct in context, not as isolated acts, and determine under the

---

[7] Rayonier's suggestion that it is entitled to summary judgment on the hostile work environment theory and on Milledge's state law claim because Plaintiff has not addressed these matters in his brief in opposition is incorrect.

Federal Rule of Civil Procedure 56(e) provides that where "the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party." Where a party fails to respond to a summary judgment motion, summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, under the terms of the rule, the Court must undertake an independent review of the merits of the dispositive motion, notwithstanding an opponent's response or lack thereof. <u>See also United States v. One Piece of Property, 5800 S.W. 4th Ave., Miami, Florida</u>, 363 F.3d 1099, 1101-02 (11th Cir. 2004).

14

>   totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment.

Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999)(internal citation omitted).

Rayonier argues that Milledge's complaints of racial insensitivity in the workplace are not severe or pervasive, and that there is no basis for concluding that the company is responsible for any of the alleged conduct. The Court agrees.

Milledge has described a few incidents where he saw racist phrases on a bathroom wall, and has stated that he heard racial jokes told by black and white coworkers during his time at Rayonier. Milledge did not elaborate on the content of these jokes, and he has not asserted that any racist remarks were ever directed at him personally. These infrequent incidents, occurring over the course of several years, did not create a hostile work environment. Notably, the racist graffiti was located on a bathroom wall, a location where socially impolite, politically incorrect, and simply offensive commentary is legion.

In short, the workplace was not "permeated with discriminatory intimidation, ridicule and insult" such that Milledge's terms and conditions of employment were altered and

AO 72A
(Rev. 8/82)

an abusive workplace was created. <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993). While offensive utterances are not to be condoned in the workplace, to restate another legal shibboleth, Title VII is not a "general civility code." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment[.]" <u>Id</u>.

Moreover, Milledge did not aver that his supervisors ever made any derogatory comments, or that Rayonier management had reason to know that Milledge was offended by the conduct of his co-workers. During Milledge's deposition, he admitted that he did not complain to his superiors regarding the KKK graffiti that he painted over, the other racist graffiti he saw, or the jokes told by his coworkers. Milledge also admitted that the company paints over the graffiti that is written in the bathrooms periodically. Summary judgment on Milledge's hostile work environment claim is appropriate.

III.     **Summary Judgment Is Proper on Milledge's Intentional Inflction of Emotional Distress Claim**

To establish liability for intentional infliction of emotional distress, the plaintiff must show that: (1) the defendant acted intentionally, or in reckless disregard for the

rights of others, (2) the actions of the defendant would naturally humiliate, embarrass, frighten, or outrage the plaintiff, and (3) the conduct caused the plaintiff's mental suffering. Moses v. Prudential Ins. Co. of Amer., 187 Ga. App. 222, 225-26 (1988).

After being passed over for the promotion, Milledge reports that he feels depressed, and that his motivation is not as good as it used to be. Milledge Dep. 91. As explained above, there is a reasonable basis to justify Rayonier's promotion decision, and there is no proof of racial bias underlying the decision. Consequently, there is no basis to conclude that the company made its promotion decision to cause Milledge any personal discomfort or strife. While the Court does not doubt the sincerity of Milledge's disappointment over the decision, it cannot be said that Rayonier's conduct was "extreme" or "outrageous." Kornegay v. Mundy, 190 Ga. App. 433, 434 (1989). As a result, summary judgment is proper on Milledge's state law claim.

## CONCLUSION

For the reasons explained above, Rayonier's motion for summary judgment is **GRANTED**. See Dkt. No. 30. The Clerk is directed to enter judgment accordingly.

**SO ORDERED**, this 27th day of October, 2005.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)